## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

VLADIMIR ST. LOUIS                          **CASE NO.:** _____

       Plaintiff,

    vs.

FLORIDA DEPARTMENT OF CORRECTIONS;
WARDEN Jess Baldridge OF CENTRAL FLORIDA
RECEPTION CENTER, in her official capacity,
OFFICER JANE DOE ROSA, Individually,
And OFFICER JANICE DOE RAMIREZ,
Individually as

       Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW,** the Plaintiff, VLADIMIR ST. LOUIS (hereinafter referred to as "Plaintiff" or "Mr. St. Louis" or "St. Louis"), by and through his undersigned counsel and sues Defendant(s), FLORIDA DEPARTMENT OF CORRECTIONS (herein after referred to as "DEPARTMENT of CORRECTIONS" or "the DEPARTMENT"); Warden Jess Baldridge in their Official capacity, OFFICER JANE DOE ROSA, (herein after referred to as "C.O. ROSA" or "Defendant Rosa") and OFFICER JANICE DOE RAMIREZ (herein after referred to as "C.O. RAMIREZ" or "Defendant Ramirez"); both

individually, and herein requests judgment of this Court declaring unconstitutional and unlawful certain actions of the Defendants, which resulted in Plaintiff being deprived of his constitutional rights guaranteed by the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution and seeks damages from Defendants as compensation for the deprivation of his constitutional rights guaranteed under federal law, for an award of attorney's fees and authorized by law, all reasonable costs of this actions, and for any other further relief that this Court deems just and proper.

## INTRODUCTION

1.      This is a civil action for damages and other relief by VLADIMIR ST. LOUIS against all Defendants for violations of the First, Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution.

2.      In general, this cause of actions results from an inmate attack that occurred on February 17, 2024, that occurred at the Central Florida Reception Center-Main Unit.

3.      This attack was planned and orchestrated by Defendant RAMIREZ, who sought to have the Plaintiff harmed for exercising his first amendment rights, where Mr. St. Louis had threatened to file a grievance and

expose her romantic relationship with inmate Lindsey, who was a part of the BLOOD's criminal gang.

4. As a result of the attack, Mr. St. Louis experienced physical and emotional injuries to include, but is not limited to: broken nose, lacerations to his lips and mouth which required stitches, blackened eyes which were swollen nearly shut, fractured ribs, and PTSD.

5. The Plaintiff's claim for relief is predicated upon *42 U.S.C. § 1983* which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States and *42 U.S.C. § 1988*, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought pursuant to *42 U.S.C. § 1983*.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331, 1332, 1343, and venue is properly set in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. §1391 as the underlying acts, omissions, events, injuries and related facts upon which the present action are based, occurred in Orange County, Florida, at the Central Florida Reception Center, Orlando, Florida.

7.    The causes of action alleged herein arise from factual allegations occurring in this judicial district.

8.    All condition precedent to the filing of this actions have occurred, accrued, or have been waived as a matter of law.

9.    On information and belief, it is alleged that the named Defendants reside in this judicial district.

10.    The Florida Department of Corrections was placed on notice of the Plaintiff's intent to sue for monetary damages prior to the filing of this suit.

11.    All administrative remedies have been exhausted through the inmate grievance process, see Chapter 33-103, prior to fling this complaint.

## PARTIES

12.    Plaintiff, VLADIMIR ST. LOUIS is presently a resident of Orlando, Florida and at all material times herein in the control and custody of the Florida Department of Corrections.

13.    At all times material, PLAINTIFF was housed at the Central Florida Reception Center, Main Unit (CFRC-Main).

14.    At the time of the offenses, Mr. St. Louis was serving a sentence of three years in case number 2022-CF-007600-A/O (count 1 - possession of firearm by a convicted felon and count 2 – possession of cannabis greater than

20 grams) and one year and one day for case number 2022-CF-007540-A-O (Fleeing and attempting to elude law enforcement), all concurrently imposed

15.     Mr. St. Louis was recently released and is currently free of custody.

16.     Defendant, FLORIDA DEPARTMENT OF CORRECTIONS, is a governmental entity organized and existing under the laws of the State of Florida.   Jess Baldridge is currently the Warden at CFRC and WARDEN S. BAKER served as the Warden at CFRC, during the relevant times of the complaint, and for the purpose of this complaint, both wardens in their official capacity are the same defendant as the Department of Corrections.

17.     Defendant, OFFICER Jane Doe ROSA, was a corrections officer who was employed by the Florida Department of Corrections and is over the age of eighteen (18) and on information and belief is a resident in or is employed in Orange County, Florida.   During all times relevant to this complaint, Defendant ROSA was acting within the course and scope of her employment and under color of law and she is sued in her individual capacity.

18.     Defendant, OFFICER Janice Doe RAMIREZ, is a corrections officer who is employed by the Florida Department of Corrections and is over the age of eighteen (18) and on information and belief is a resident in or is employed in Orange County, Florida.  During all times relevant to this complaint, Defendant

RAMIREZ was acting within the course and scope of her employment and under color of law and she is sued in her individual capacity.[1]

GENERAL ALLEGATIONS COMMON TO ALL COUNTS

19.    February 17, 2024, the Plaintiff was working in the food services department.  The shift begins at 11:00 a.m. and ends between 7:00 p.m. and 8:30 p.m.

20.    Officer Ayala was stationed in the food service department and charged with supervising the inmates working there.

21.    On February 17, 2024, at approximately 4:00 p.m., Officer Ayala informed Mr. St. Louis that Defendants Rosa and Ramirez wanted him to return to G-dormitory, where Mr. St. Louis is housed.

22.    When asked, C.O. Ayala could not provide a reason but told Mr. St. Louis to report.

23.    Prior to having Mr. St. Louis summoned to G-dormitory, Officer Ramirez, conspired with inmate Lindsey, whom she had a romantic relationship with, to have multiple inmates assist him in attacking Mr. St. Louis.

---

[1] Currently counsel has been able to obtain the first names or employee badge numbers for the C.O.'s, however counsel has made the relevant inquires and expect to amend this complaint with the upcoming days.

24.    Inmate Lindsey is known to be affiliated with the Bloods criminal enterprise gang, and it is suspected that both Defendant Rosa and Defendant Ramirez are affiliated with and associated with the same gang.

25.    Mr. St. Louis had no prior altercation or issue with any of the inmates that attacked him.

26.    However, Mr. St. Louis had unpleasant words with Officer Ramirez during lunch on February 17, 2024, where she asked for certain food perks and privileges be given to inmate Lindsey and other members of the gang.

27.    Upon refusing to do so, Mr. St. Louis threatened to file a grievance against C.O. RAMIREZ and expose her unlawful romantic relationship with inmate Lindsey if she insisted that he perform the favor being asked.

28.    In response, RAMIREZ warned Mr. St. Louis that he "did not know who is was fucking with".

29.    G-dormitory is comprised of four separate units commonly referred to as quads.

30.    The four quads are numbered, with quads one and two located on the left side of the dormitory, and quads three and four situated on the right side. Each side provides its own entry door.

31.    G-dormitory's officers' station is located in the center of all four quads. This allows staff members to observe all inmates to include when inmates are walking through the sally port, which is essentially a hallway dividing the door of G-dormitory and the entry doors of quads one and two as well as quads three and four on the right side of the dormitory.

32.    In addition to sight supervision, video cameras capture inmates from the moment they enter G-dormitory until they enter their designated cell once they are inside one of their quads.

33.    Mr. St. Louis arrived at G-dormitory and entered the door leading to quads three and four.

34.    St. Louis' cell was located in quad three.

35.    Upon entering the building, Mr. St. Louis was attacked by approximately six-eight inmates. The inmates began to batter the Plaintiff by punching and kicking him all while attempting to pull the Plaintiff inside of the laundry room.

36.    During the beating of the Plaintiff, C.O. Rosa and C.O. Ramirez remained at the Officers' station observing the assault. Neither Defendant attempted to request assistance via radio or activate the panic button, which is standard operating procedure when an emergency situations occur.

37.    Likewise, neither C.O. ROSA nor C.O. RAMIREZ attempted to intervene themselves during the assault to stop the attack and provide assistance to the Plaintiff.

38.    Mr. St. Louis managed to make it to the front door, whereupon he began to bang on the door in an attempt to flee the dormitory and yelled for help.

39.    After an unreasonable amount of time, C.O. Rosa entered the door in which the Plaintiff was banging on and proceeded to walk past the Plaintiff, without rendering aid, and she yelled at the "attacking" inmates, that they were supposed to wait until Mr. St. Louis was in the laundry room before attacking him.

40.    C.O. Ramirez has extensive knowledge of the video cameras in the facility and knows that the there is a "blind spot" located in the laundry room where the attack would not have been visible.    C.O. Rosa's statement demonstrates that while she may not have orchestrated the attack, she had knowledge the attack would occur.

41.    As a result of the attack, the Plaintiff was bloodied and sustained a fractured nose, lacerations to his lips and mouth which required stitches,

blackened eyes which were swollen nearly shut, and fractured ribs. Plaintiff also experiences PTSD from the attack.

42. After the attack ended, the Plaintiff requested medical attention. A substantial amount of blood was visible to C.O. Rosa. There was blood on the floor of the sally port and on the Plaintiff's clothes.

43. Despite observing this and observing Plaintiff holding his ribs and having trouble breathing, both Defendant Rosa and Defendant Ramirez attempted to have the Plaintiff go inside his assigned quad without being treated by medical professionals.

44. Mr. St. Louis ultimately exited G-dormitory and walked to the medical unit.

45. As Plaintiff walked to get medical treatment, he overheard Officer Rosa tell Officer Ayala in the food service department, that if anyone were to inquire as to why the Plaintiff left food service, he was to say that he did not know and to never say to anyone that ROSA had made the request.

46. Once in the medical department, Mr. St. Louis was diagnosed with a fractured nose, blackened and swollen eyes, lacerations to his lips and mouth that requires stitches, and fractured ribs.

47.     The attack experienced by Mr. St. Louis is captured on video.  In addition, the video demonstrates that both Defendant Rosa and Defendant Ramirez standing and watching the attack and failing to intervene within a reasonable time.

48.     Between February 22, 2024 and May of 2024, the Plaintiff filed several grievances pursuant to Chapter 33-103.  In the grievances, the Plaintiff put the Department of Corrections on notice that he would be seeking monetary compensation for injuries he sustained.

49.     Eventually, Plaintiff was informed that the Office of the Inspector General's Office would be investigating the incident and that his administrative remedies had exhausted.

50.     Officer Ramirez was terminated or was forced to resign weeks after this incident which occurred on February 17, 2024.

51.     Each of the identified attackers (defendant was only able to identify five) were also disciplined as a result of the incident and placed into confinement approximately one week later.

[Remainder of Page Blank]

## GENERAL ALLEGATION REGARDING POLICY AND PRACTICE AND FAILURE TO CURTAIL OR CURE UNCONSTUTUTIONAL ACTS

52.    Defendant FLORIDA DEPARTMENT OF CORRECTIONS acted with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of the Plaintiff and all persons similarly situated, where it maintained, tolerated, permitted, acquiesced in, female employees having inappropriate romantic relationships with inmates.

53.    While Defendant, Department of Corrections does not keep specific statistics pertaining to female correctional officers having romantic relationships with male inmates, it is a widely known phenomenon and is known by the Department.

54.    That this policy and practice was also known by Warden Baker.

55.    Both Baker and the DEPARTMENT failed to implement policies and oversight to prevent these inappropriate and unlawful relationships.

56.    Both Baker and the DEPARTMENT knew or should have known that female correctional officers used their romantic relationship with inmates to have inmates carryout acts of violence on other inmates as a form of retaliation and punishment.

57. Both Baker and the DEPARTMENT showed deliberate indifference to the PLAINTIFF'S constitutional rights by failing to curtail these unlawful and inappropriate romantic relationships.

58. Both Baker and the DEPARTMENT turned a blind eye to these unlawful and inappropriate relationships and failed to safeguard against them by female corrections officers supervised at all times by male corrections officers.

59. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that defendant, DEPARTMENT OF CORRECTIONS, acquiesced in, tolerated, or permitted other defendants herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs set forth in the preceding paragraphs.

60. Defendant's conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by the Department or deliberate indifference, gross negligence, or reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiff.

[Remainder of Page Blank]

## CAUSES OF ACTION

### CONSTITUTIONAL CLAIMS COUNT I
### 42 U.S.C. § 1983
### DEPRIVATION OF CIVIL RIGHTS AGAINST DEFENDANT
(FLORIDA DEPARTMENT OF CORRECTIONS Deliberate Indifference)

61.    Plaintiff herein re-alleges paragraphs 1 through 60.

62.    This is an action for violation of civil rights under 42 U.S.C. § 1983 against Defendant, FLORIDA DEPARTMENT CORRECTIONS.

63.    Defendants Ramirez and Rosa are employees of the Defendant Department of Corrections.

64.    Defendant Ramirez used her romantic relationship with inmate Lindsey to retaliate, prevent, and punish Mr. St. Louis for the exercise of his First Amendment Right.

65.    Defendants Ramirez and Rosa failed prevent the attack orchestrated by Defendant Ramirez, and allowed cruel and unusual punishment by inmates to be inflicted upon Mr. St. Louis, in violation of the 8th Amendment.

66.    Neither intervened to stop the attack within a reasonable time.

67.    Romantic and inappropriate relationships between female corrections officers in general are known to the Defendant, the DEPARTMENT, who has failed to implement any policy to curtail these unlawful actions.

68.     The romantic relationship between Defendant Ramirez and Inmate Lindsy was the motivation behind the orchestrated attack, where Ramirez was afraid of having her relationship exposed.

69.     Knowing the risk of correctional officers using their unlawful and inappropriate relationships with inmates to exhort retaliation and punishment, female guards are left unsupervised with male inmates.

70.     As a direct and proximate result of the foregoing, plaintiffs sustained severe physical injuries and damage.

71.     As a result, thereof, plaintiff rights under the First, Eighth and Fourteenth Amendments to the U.S. Constitution were violated. As a further result thereof, plaintiff sustained the injuries and damages alleged herein.

72.     That as a direct and proximate result of the aforesaid acts and conduct, the Plaintiff, suffered and will continue to suffer in the future, physical inconvenience and discomfort, physical suffering, and mental pain and suffering.

WHEREFORE, Plaintiff, demands judgment for damages against Defendant, FLORIDA DEPARTMENT OF CORRECTIONS, costs of this action, and such other and further relief as the Court deems appropriate.

## COUNT II:
## 42 U.S.C. § 1983
### FIRST AMENDMENT VIOLATION RETALIATION
(C.O. RAMIREZ)

73.    Plaintiff realleges paragraphs 1 through 51.

74.    This is an action for violation of civil rights under 42 U.S.C. § 1983 against Defendant, C.O. RAMIREZ.

75.    RAMIREZ while acting under color of law, deprived Plaintiff of his civil rights under the First, Fourteenth Amendments to the United States Constitution when she orchestrated an attack by inmates on the Plaintiff, as retaliation, and to prevent Mr. St. Louis from exposing her inappropriate romantic relationship with a fellow inmate.

76.    This is a violation of the First Amendment.

77.    Ramirez had a duty to reasonably protect Plaintiff from inmate violence.

78.    Ramirez had a duty to not use inmates to inflict punishment and retaliate against inmates, for her benefit.

79.    Ramirez failed to reasonably perform of her duties.

80.    As a direct result of the wrongdoing Plaintiff has suffered injury as noted above.

WHEREFORE, PLAINTIFF prays for damages against Defendant Ramirez in her individual capacity, and an award of Plaintiff's attorney's fees. In addition, Plaintiff requests punitive damages against Defendant Ramirez for her conduct, which would deter him from such tortious conduct in the future.

## COUNT III:
## 42 U.S.C. § 1983
### EIGHTH AMENDMENT VIOLATION EXCESSIVE FORCE
(C.O. RAMIREZ)

81.  Plaintiff re-alleges paragraphs 1 through 51.

82.  This is an action for violation of civil rights under 42 U.S.C. § 1983 against Defendant, C.O. RAMIREZ.

83.  RAMIREZ while acting under color of law, deprived Plaintiff of his civil rights under the Eighth and Fourteenth Amendments to the United States Constitution when she orchestrated an attack by inmates on the Plaintiff, as retaliation, and to prevent Mr. St. Louis from exposing her inappropriate romantic relationship with a fellow inmate.

84.  Defendant Ramirez is liable to Plaintiff in the orchestrated and directed the use of excessive force be used Plaintiff and then failed to intervene within a reasonable time when inmates use the excessive force against Plaintiff.

85. This constitutes a violation of the Eighth Amendment to the U.S. Constitution, prohibiting cruel and unusual punishment.

86. Ramirez had a duty to reasonably protect Plaintiff from inmate violence.

87. Ramirez had a duty to intervene with a reasonable time to terminate inmate violence.

88. Ramirez failed to reasonably perform her duties.

89. As a direct result of the wrongdoing Plaintiff has suffered injury as noted above.

WHEREFORE, PLAINTIFF prays for damages against Defendant Ramirez in her individual capacity, and an award of Plaintiff's attorney's fees. In addition, Plaintiff requests punitive damages against Defendant Ramirez for her conduct, which would deter him from such tortious conduct in the future.

### COUNT III:
### 42 U.S.C. § 1983
### EIGHTH AMENDMENT VIOLATION
### FAILURE TO INTERVENE IN EXCESSIVE FORCE
(C.O. ROSA)

90. Plaintiff re-alleges paragraphs 1 through 51.

91. This is an action for violation of civil rights under 42 U.S.C. § 1983 against Defendant, C.O. ROSA.

92.    ROSA while acting under color of law, deprived Plaintiff of his civil rights under the Eighth and Fourteenth Amendments to the United States Constitution when she watched an attack by inmates on the Plaintiff, where excessive force was used on the Plaintiff as a punishment for exercising his First Amendment Rights.

93.    Defendant ROSA knew of the attack before it happened and was in a physical position to intervene to prevent the attack and/or to prevent the excessive force implemented against the Plaintiff, but failed to do so.

94.    Defendant ROSA did not act within a reasonable time during the attack and then offered no help to the Plaintiff to get immediate medical care.

95.    This constitutes a violation of the Eighth Amendment to the U.S. Constitution, prohibiting cruel and unusual punishment.

86.    ROSA had a duty to reasonably protect Plaintiff from inmate violence and to stop the violence within a reasonable time of noticing the violence occur.

87.    ROSA had a duty to intervene with a reasonable time to end inmate violence.

88.    ROSA failed to reasonably perform her duties.

89.     As a direct result of the wrongdoing Plaintiff has suffered injury as noted above.

WHEREFORE, PLAINTIFF prays for damages against Defendant Ramirez in her individual capacity, and an award of Plaintiff's attorney's fees. In addition, Plaintiff requests punitive damages against Defendant Ramirez for her conduct, which would deter him from such tortious conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff seeks judgment as follows:

A. Compensatory damages against each of the defendants herein;

B. Punitive damages against defendants sued individually;

C. Pre-judgment interest on all economic losses and post-judgment interest;

D. Attorney's fees pursuant to 42 U.S.C. §§ 1988 and costs of litigation;

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable.

This twenty  page complaint (excluding this certificate) is respectfully

and humbly submitted on this 17th day of February, 2026.

**Haynes Law, P.A.**

__/s/ *Carlus Haynes*_____
**CARLUS HAYNES, ESQUIRE**
Florida Bar Number: 0935611
8615 Commodity Circle, Unit 6
Orlando, FL 32819
Telephone: (407) 246-0077
Facsimile: (407) 246-0078
champ@fighting4ulaw.com
Attorney for PLAINTIFF


[Remainder of Page Blank]